# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| BARBARA O'BOYLE, Individually and on Behalf of All Others Similarly Situated, | Case No.: 20-cv-486 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| NATIONWIDE RECOVERY SYSTEMS, LTD., | **Jury Trial Demanded** |
| Defendant. | |

Plaintiff Barbara O'Boyle (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief as follows:

## NATURE OF ACTION

1. Plaintiff brings this action for damages, and other legal and equitable remedies, resulting from the illegal actions of Defendant in negligently, knowingly and/or willfully placing telephone calls to Plaintiff's and Class members' cellular telephones without their prior express written consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. (hereinafter referred to as the "TCPA").

2. Defendant has violated the TCPA by contacting Plaintiff and Class members on their cellular telephones via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), without their prior express consent within the meaning of the TCPA.

3. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

4. Plaintiff brings this action for actual damages, injunctive relief and statutory damages resulting from Defendant's illegal actions.

## JURISDICTION AND VENUE

5. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 28 U.S.C. § 1331; 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 753 (2012) (holding that federal courts have federal question jurisdiction over TCPA claims.).

6. This Court has personal jurisdiction over Defendant because the conduct at issue occurred in or was directed toward individuals in the state of Wisconsin. Plaintiff received automated telephone calls to her cellular telephone from Defendant without her consent for such calls. Defendant made automated telephone calls to cellular telephones, including Plaintiff's, that are assigned a Wisconsin-based telephone number. Defendant has established minimum contacts showing it has purposefully availed itself to the resources and protection of the State of Wisconsin. Defendant does substantial business in Wisconsin.

7. Venue is proper in the United States District Court for the Eastern District of Wisconsin pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a), because a substantial part of the events giving rise to the claims, namely automated telephone calls to persons in this District and debt collection activities, occurred in this District.

## PARTIES

8. Plaintiff Barbara O'Boyle ("O'Boyle") is an individual citizen of the State of Wisconsin, who resides in Oak Creek, Milwaukee County, Wisconsin.

9. Plaintiff is a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that she engaged in consumer credit transactions. Wis. Stat. § 421.301(10).

10. Defendant Nationwide Recovery Systems, Ltd. ("NRS") is a debt collection agency with its primary place of business at 2304 Tarpley Road, Suite 134, Carrollton, Texas 75006.

11. NRS is engaged in the business of collecting debts owed to itself and others that were incurred for personal, family or household purposes.

12. The alleged debt that NRS was attempting to collect from Plaintiff arose from alleged debts incurred for personal, family or household purposes. All of Plaintiff's alleged debts are consumer debts. Plaintiff does not have any business debts.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991
## (TCPA), 47 U.S.C. § 227

13. In 1991, Congress enacted the TCPA, in response to a growing number of consumer complaints regarding certain telemarketing practices.

14. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call, including sending a text message, to a wireless number in the absence of an emergency or the prior express written consent of the called party.

15. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls and texts whether they pay in advance or after the minutes are used.

16. The FCC, has ruled that the word "call" in the TCPA includes both voice calls and text calls, and applies whether the text messages were sent by regular telephone transmission or over the internet to a wireless device. "TCPA Omnibus Declaratory Ruling and Order," FCC 15-72 at 56-62 (July 10, 2015), (available at "https://www.fcc.gov/document/tcpa-omnibus-

declaratory-ruling-and-order.") (Reaffirming the FCC's 2003 ruling that text messages are "calls" under the TCPA and further ruling that text messages sent "internet to phone" and by other sources are also "calls.")

17. The TCPA "generally prohibits autodialed calls to wireless phones," but "provides an exception for autodialed and prerecorded message calls ... made with the prior express consent of the called party." *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 512 (E.D. Wis. 2014) citing *In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559 ¶ 9 (Jan. 4, 2008); 47 U.S.C. § 227(b)(1)(A)(iii).

18. On February 15, 2012, the FCC released a Declaratory Ruling wherein it clarified that a party must obtain **prior express written consent** from the recipient prior to making automated calls to the recipient's cellular telephone. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("2012 FCC Declaratory Ruling"), 27 F.C.C.R. 1830, 27 FCC Rcd. 1830, 55 Communications Reg. (P&F) 356, 2012 WL 507959 (Feb, 15, 2012), at ¶ 2.

19. The FCC recently updated its rules on consent, requiring "prior express written consent" for calls or SMS text messages that contain an "advertisement" or "telemarketing." *See* 47 C.F.R. § 64.1200(f)(8).

20. In the same omnibus order, the FCC clarified "that a called party may revoke consent at any time and through any reasonable means. A caller may not limit the manner in which revocation may occur." TCPA Omnibus Declaratory Ruling and Order," FCC 15-72 at 29-30.

21. The Court is bound by all of the FCC's final orders relating to the TCPA. *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, footnote 4 (E.D. Wis. 2014) citing *CE*

4

*Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010) (holding that under the Hobbs Act, the FCC's TCPA orders are binding); *Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010) (holding that under the Hobbs Act, the FCC's TCPA orders are binding).

22. The TCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 U.S. Dist. LEXIS 84972 *6 (N.D.W. Va. June 30, 2016) ("merely asserting a 'bare procedural violation, divorced from any concrete harm,' will not satisfy the concreteness requirement. This observation has little application to claims under the TCPA, since those claims are not based on 'bare procedural' rights, but rather on substantive prohibitions of actions directed toward specific consumers.") (internal citations omitted)

**THE FAIR DEBT COLLECTION PRACTICES ACT**

23. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a

5

misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."). For this reason, and to

encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

24. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

25. Misrepresentations of the character, amount or legal status of any debt, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016)

(holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

## FACTUAL ALLEGATIONS

26. At all times relevant, O'Boyle is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

27. O'Boyle never provided her cellular telephone number to NRS.

28. After O'Boyle was unable to make payments on her accounts, NRS began calling O'Boyle's cellular telephone.

29. NRS placed a telephone call to O'Boyle's cellular telephone in February 2020.

30. On each call, NRS left a prerecorded message requesting O'Boyle contact NRS by telephone.

31. The call history on O'Boyle's cellular phone indicates the call listed above was made from the number "(903) 206-4775." This telephone number belongs to NRS.

32. NRS is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39) ("The term 'person' includes an individual, partnership, association, joint-stock company, trust, or corporation.")

33. All telephone contact by NRS to O'Boyle on her cellular telephone occurred via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1).

34. The telephone number that NRS used to contact O'Boyle, made by an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

35. O'Boyle never provided "prior express consent" to NRS or anyone else to place telephone calls or text messages to O'Boyle's cellular phone utilizing an "artificial or prerecorded voice" within the meaning of 47 U.S.C. § 227(b)(1)(A).

36. NRS's telephone call to O'Boyle's cellular phone was not "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

37. NRS's telephone call, placed to O'Boyle's cellular phone utilizing a "prerecorded voice" for non-emergency purposes and in the absence of O'Boyle's prior express consent, violated 47 U.S.C. § 227(b)(1)(A).

38. Under the TCPA, the burden is on Defendants to demonstrate that NRS currently had prior express consent within the meaning of the statute.

39. The Seventh Circuit has held that the "'called party' in § 227(b)(1) means the person subscribing to the called number at the time the call is made." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012); *see also Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251-52 (11th Cir. 2014) ("called party" means the current subscriber and not the prior subscriber or intended recipient for purposes of the TCPA).

40. Plaintiff has never received a written communication from NRS.

41. Plaintiff did not receive a written communication from NRS within five days of receiving the telephone call described above.

42. Upon information and belief, NRS did not send Plaintiff a written communication regarding the debt that NRS had attempted to collect in the earlier phone call.

43. The FDCPA requires:

(a) Notice of debt; contents Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

9

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

44. NRS failed to provide the validation notice within five days of the initial telephone call in February 2020.

## COUNT I

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ*.

45. O'Boyle incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

46. The foregoing acts and omissions of NRS constitute a knowing and/or willful violation of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

47. As a result of NRS' knowing and/or willful violation of 47 U.S.C. § 227 *et seq.*, O'Boyle and each member of the Class are entitled to treble damages of up to $1,500.00 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

## COUNT II

### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ*.

10

Case 2:20-cv-00486-JPS    Filed 03/25/20    Page 10 of 15    Document 1

48. O'Boyle incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

49. The foregoing acts and omissions of NRS constitute a violation of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

50. As a result of NRS' violation of 47 U.S.C. § 227 *et seq.*, O'Boyle and Class members are entitled to an award of $500.00 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

51. O'Boyle and Class members are also entitled to and do seek injunctive relief prohibiting NRS' violation of the TCPA in the future.

52. O'Boyle and Class members are also entitled to an award of attorneys' fees and costs.

## COUNT III – FDCPA

53. O'Boyle incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

54. NRS failed to send the validation notice to Plaintiff and the class within five days of NRS's initial telephone contact with Plaintiff.

55. Defendant violated 15 U.S.C. § 1692g(a) and 1692g(b).

## CLASS ACTION ALLEGATIONS

56. Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated.

57. Plaintiff brings this action on behalf of two classes.

58. Class 1 is defined as:

> All persons within the United States who, between March 25, 2016 and March 25, 2020, inclusive, received a non-emergency telephone call from or on behalf of NRS to a cellular telephone through the use of an artificial or prerecorded voice.

Plaintiff O'Boyle represents, and is a member of, the Class. Excluded from the Class is Defendant NRS and any entities in which NRS or its parent company has a controlling interest; NRS's agents and employees; any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

59. Class 2 is defined as:

> All persons within the United States who, between March 25, 2019 and March 25, 2020, received an initial telephone call from or on behalf of NRS, and NRS did not send a written communication to the person, containing the FDCPA validation notice within five days of the initial telephone call.

Plaintiff O'Boyle represents, and is a member of, the Class. Excluded from the Class is Defendant NRS and any entities in which NRS or its parent company has a controlling interest; NRS's agents and employees; any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

60. O'Boyle does not know the exact number of members in each Class, but O'Boyle reasonably believes that Class members number at minimum in the hundreds, if not thousands.

61. O'Boyle and all members of each Class have been harmed by the acts of NRS. NRS's autodialed calls to Plaintiff's and class members' cell phones after they revoked consent invade the class members' privacy, a harm which the TCPA was expressly created to remedy. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 132 S. Ct. 740, 745 (2012) ("In enacting the TCPA, Congress made several findings relevant here. 'Unrestricted telemarketing,' Congress determined, 'can be an intrusive invasion of privacy.' TCPA, §2, ¶5, 105 Stat. 2394, note following 47 U.S.C. §227 (Congressional Findings) (internal quotation marks omitted)). Plaintiff and class members wasted time answering or addressing robocalls.

12

62. This Class Action Complaint seeks injunctive relief and money damages.

63. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The Class can be identified easily through records maintained by NRS and/or its agents.

64. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact involving the class claims predominate over questions which may affect individual Class members. Those common questions of law and fact include, but are not limited to, the following:

    a. Whether NRS and/or its agents made non-emergency calls to O'Boyle's and Class members' cellular telephones using an artificial or prerecorded voice;

    b. Whether NRS can meet its burden of showing it obtained prior express consent (*i.e.*, consent that is clearly and unmistakably stated), to make such calls;

    c. Whether NRS' conduct was knowing and/or willful;

    d. Whether NRS failed to send written communications containing the FDCPA validation notice within five days of the initial communication with each class member;

    e. Whether NRS is liable for damages, and the amount of such damages; and

    f. Whether NRS should be enjoined from engaging in such conduct in the future.

65. O'Boyle asserts claims that are typical of each Class member. O'Boyle will fairly and adequately represent and protect the interests of the Class, and has no interests which are antagonistic to any member of the Class.

66. O'Boyle has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes, including claims under the TCPA.

67. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendant to comply with the TCPA and FDCPA. The interest of Class members in individually controlling the prosecution of separate claims against NRS is small because the statutory damages in an individual action for violation of the TCPA and FDCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

68. NRS has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, O'Boyle alleges that the TCPA and FDCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## JURY DEMAND

69. O'Boyle hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against Defendant:

A. Injunctive relief prohibiting such violations of the TCPA and FDCPA by Defendant in the future;

B. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff O'Boyle seeks for herself and each Class member treble damages, as provided by statute, of up to $1,500.00 for each and every call that violated the TCPA;

C. As a result of Defendant's violations of 47 U.S.C. § 227(b)(1), Plaintiff O'Boyle seeks for herself and each Class member $500.00 in statutory damages for each and every call that violated the TCPA;

D. As a result of Defendant's violations of 15 U.S.C. § 1692g, an award of statutory damages up to $1,000 or actual damages per class member;

E. An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

F. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

G. Such other relief as the Court deems just and proper.

Dated: March 25, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com